UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORTH WORTH DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | |
| Plaintiff, | |
| v. | Civil Action No. 4:21-cv-01251-P |
| FIRSTCASH, INC., *et al.*, | |
| Defendants. | |

**DEFENDANT FIRSTCASH, INC.'S BRIEF IN SUPPORT
OF MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

BACKGROUND ................................................................................................. 2

LEGAL STANDARD.......................................................................................... 5

ARGUMENT ...................................................................................................... 6

I.  THE CFPB'S STRUCTURE IS UNCONSTITUTIONAL. ................................... 6

    A.  The CFPB's Self-Funding Scheme Violates the Appropriations
        Clause........................................................................................ 6

    B.  Prior Case Law Outside the Fifth Circuit Has Not Truly Grappled
        with the Serious Constitutional Issues Raised by the Self-Funding
        Scheme ...................................................................................... 11

    C.  Dismissal is the Appropriate Remedy........................................ 13

CONCLUSION.................................................................................................. 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Fed'n of Gov't Emps., AFL-CIO, Local 1647 v. Fed. Labor Relations Auth.*,
    388 F.3d 405 (3d Cir. 2004)........................................................................................13

*CFPB v. All American Check Cashing, Inc.*,
    33 F.4th 218 (5th Cir. 2022) (en banc) .............................................................. *passim*

*Community Financial Services Association of America v. CFPB*,
    No. 21-50826, 2022 WL 11054082 (5th Cir. Oct. 19, 2022) (Wilson, J.)............................................................................................................................. *passim*

*FEC v. NRA Political Victory Fund*,
    6 F.3d 821 (D.C. Cir. 1993) ......................................................................................14

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
    561 U.S. 477 (2010)........................................................................................9, 12, 13

*Funk v. Stryker Corp.*,
    631 F.3d 777 (5th Cir. 2011) ......................................................................................4

*New York v. United States*,
    505 U.S. 144 (1992).....................................................................................................3

*Peddy v. Aaron's, Inc.*,
    No. 18-1625, 2019 WL 763510 (E.D. La. Feb. 20, 2019)............................................5

*PHH Corp. v. CFPB*,
    881 F.3d 75 (D.C. Cir. 2018).......................................................................11, 12, 13

*Ryan v. Flowserve Corp.*,
    444 F. Supp. 2d 718 (N.D. Tex. 2006) .......................................................................6

*Selia Law LLC v. CFPB*,
    140 S. Ct. 2183 (2020)...................................................................................... *passim*

*Summit 6 LLC v. HTC Corp.*,
    No. 7:14-cv-00014-O, 2015 WL 11117867 (N.D. Tex. May 28, 2015).......................5

*Troyer v. Allcat Claims, LLC*,
    No. 06-7821, 2007 WL 3275123 (E.D. La. Nov. 5, 2007)...........................................5

*U.S. Dep't of the Navy v. Fed. Labor Relations Auth.*,
  665 F.3d 1339 (D.C. Cir. 2012) ..................................................................6

**Constitution**

U.S. Const. art. I, § 9, cl. 7 ......................................................................2

**Statutes**

12 U.S.C. § 243 ...........................................................................................5

12 U.S.C. § 5497 .......................................................................................15

12 U.S.C. § 5497(a) .....................................................................................4

12 U.S.C. § 5497(a)(2)(C) ...........................................................................5

12 U.S.C. § 5497(a)(4)(E) ..........................................................................11

12 U.S.C. § 5497(b) .....................................................................................4

12 U.S.C. § 5497(c)(1) .................................................................................4

12 U.S.C. § 5497(d) .....................................................................................4

12 U.S.C. § 5497(d)(2) .................................................................................4

12 U.S.C. § 5497(e) .....................................................................................5

12 U.S.C. § 5512 ...........................................................................................3

12 U.S.C. § 5531 ...........................................................................................3

12 U.S.C. § 5562 ...........................................................................................3

12 U.S.C. § 5563 ...........................................................................................3

12 U.S.C. § 5564 ...........................................................................................3

12 U.S.C. § 5565 ...........................................................................................3

**Other Authorities**

82 Fed. Reg. 54472 (Nov. 17, 2017) ...........................................................7

**FIRSTCASH'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

CFPB, *Annual Performance Plan and Report, and Budget Overview* (Feb. 2022),
   https://files.consumerfinance.gov/f/documents/cfpb_performance-plan-and-report_fy22.pdf .........................................................................4, 15

CFPB, *CFO Update Through the Third Quarter of Fiscal Year 2022* (Aug. 23, 2022), https://files.consumerfinance.gov/f/documents/cfpb_cfo-update_report_fy-2022_q3.pdf ...................................................................15

Markham S. Chenoweth & Michael P. DeGrandis, *Out of the Separation-of-Powers Frying Pan and Into the Nondelegation Fire: How the Court's Decision in* Selia Law *Makes the CFPB's Unlawful Structure Even Worse*, U. OF CHICAGO L. REV. ONLINE (Aug. 27, 2020), https://lawreviewblog.uchicago.edu/2020/08/27/seila-chenoweth-degrandis/ ........................................................................................10, 12, 13

**FIRSTCASH'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

This enforcement action against FirstCash, Inc. and its subsidiaries (collectively, "FirstCash") should be dismissed because the Consumer Financial Protection Bureau ("CFPB" or the "Bureau") is unconstitutionally structured. More specifically, the CFPB obtains funding through a historically unprecedented mechanism that leaves it immune from Congressional oversight and places the power of the purse in the hands of the Executive Branch. FirstCash had identified this defect as a complete defense in its answer (ECF No. 53, Seventh Affirmative Defense). Now, the Fifth Circuit has just confirmed that this anomalous structure does indeed violate the Appropriations Clause and the Constitution's separation of powers principles. *Community Financial Services Association of America v. CFPB*, No. 21-50826, 2022 WL 11054082, at *17 (5th Cir. Oct. 19, 2022) (Wilson, J.) ("The Bureau's funding apparatus cannot be reconciled with the Appropriations Clause and the clause's underpinning, the constitutional separation of powers").

Never has an agency with such broad legislative, prosecutorial, and adjudicatory power functioned with so little accountability to the people it purports to serve. What is at peril here is nothing less than the Framers' intent to preserve individual liberty by imposing checks and balances on the various branches of government, vesting each with powers that constrain the others to let "[a]mbition … counteract ambition." THE FEDERALIST NO. 51 (James Madison). The CFPB's unconstitutional structure eliminates a critical check on the Presidency by placing the power of both "purse and sword" into the hands of the Executive Branch. *Community Financial*, 2022 WL 11054082, at *1; *see also CFPB v. All American Check Cashing, Inc.*, 33 F.4th 218, 224 (5th Cir. 2022) (en banc) (Jones, J., concurring).[1] As further explained below, because this lawsuit is the product of that constitutionally infirm funding mechanism, the only appropriate remedy is to invalidate this action in its

---

[1] Unless otherwise noted, all citations to *All American Check Cashing* are to Judge Jones' concurring opinion.

**FIRSTCASH'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

entirely and to enter judgment in favor of FirstCash.

## BACKGROUND

The Appropriations Clause of the Constitution firmly vests Congress with the exclusive power to determine how the people's money is spent. U.S. Const. art. I, § 9, cl. 7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law"); *see also Community Financial,* 2022 WL 11054082, at *13 ("The Appropriations Clause's 'straightforward and explicit command' ensures Congress's *exclusive* power over the federal purse") (quoting *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990)). The Appropriations Clause—and Congressional control over federal finances—is a critical component of the system of checks and balances and integral to the Constitution's vision of preserving individual liberty. *See id*. at *12 ("[the Framers] viewed Congress's exclusive 'power over the purse' as an indispensable check on 'the overgrown prerogatives of the other branches of government'"); *Selia Law LLC v. CFPB*, 140 S. Ct. 2183, 2203 (2020) (describing the "power of the purse" as "the most compleat [sic] and effectual weapon" in protecting the interests of the people) (quoting THE FEDERALIST NO. 58, at 394 (James Madison)); *All Am. Check Cashing*, 33 F.4th at 229 ("In the Framers' view, then, placing the new government's fiscal powers in the hands of the people's representatives and protecting the purse from executive control were commensurate with preserving liberty").

By placing control over government funding with Congress, the branch of government most directly responsive to the people, the Framers intended to prevent the accumulation of power in the Executive Branch and provide Congress with a robust mechanism to ensure Executive accountability and even affect substantive policy changes. *See Community Financial*, 2022 WL 11054082, at *12 ("The Framers also believed that vesting Congress with control over fiscal matters was the best means of ensuring transparency and accountability to the people"); *All Am. Check Cashing*, 33 F.4th at 231

**FIRSTCASH'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

("Congress used [the appropriations power] to achieve substantive ends. An 1810 appropriations bill, for example, made certain diplomatic officials' salaries contingent on their being appointed by the president and confirmed by the Senate, even though no substantive law required Senate confirmation"). Congress may not assign its appropriations power to the Executive Branch even if it desires to do so. *See id.* at 225; *see also New York v. United States*, 505 U.S. 144, 182 (1992) ("The Constitution's division of power among the three branches is violated where one branch invades the territory of another, whether or not the encroached-upon branch approves of the encroachment").

The CFPB was created in 2010 by the Dodd-Frank Act to consolidate enforcement of consumer protection laws related to the financial services industry. Dodd-Frank gave the CFPB exclusive authority to enforce 18 pre-existing consumer protection laws previously scattered across several different government agencies, as well as new authority to counter "unfair, deceptive, or abusive" practices related to consumer finance. 12 U.S.C. §§ 5481(12), 5531. The resulting CFPB authority is extraordinarily broad. It carries out executive, judicial, and legislative functions, including conducting rulemakings and issuing regulations, 12 U.S.C. § 5512, demanding documents and other evidence through subpoenas and civil investigative demands (as they did of FirstCash before filing this civil action), 12 U.S.C. § 5562, initiating administrative proceedings and civil litigation for violations of laws under its purview, 12 U.S.C. §§ 5563, 5564, holding administrative hearings, 12 U.S.C. § 5563, and assessing penalties, 12 U.S.C. § 5565; *see also Selia Law*, 140 S. Ct. at 2203-04 (the CFPB may "issue final regulations, oversee adjudications, set enforcement priorities, initiate prosecutions, and determine what penalties to impose on private parties"). With limited exception for review of Bureau-issued regulations, the CFPB Director is subject to no oversight other than removal by the President.

At its inception, the Bureau was created with the explicit design to be "independent" from oversight by the elected branches by means of two significant

**FIRSTCASH'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

departures from typical agency structure: (1) a single Director removable by the President only for cause and (2) a self-funding structure doubly insulated from the Congressional appropriations process.  The Supreme Court has already held that the for-cause removal provision is unconstitutional and severed it from the Bureau's requirements, making the CFPB Director removable at will by the President.  *See Selia Law*, 140 S. Ct. at 2192.

But the self-funding defect remained.  The CFPB has the statutory right—at the Director's sole discretion—to draw the amount it "determine[s] to be reasonably necessary to carry out the authorities of the Bureau" from the Federal Reserve, up to 12% of the Federal Reserve's annual budget, without receiving Congressional approval or providing any reporting about the funds' use.  12 U.S.C. § 5497(a).  This amount was $734 million in FY2022 and is projected to exceed $750 million in FY2023.  *See* CFPB, *Annual Performance Plan and Report, and Budget Overview* (Feb. 2022) at 12, https://files.consumerfinance.gov/f/documents/cfpb_performance-plan-and-report_fy22.pdf. This document is publicly available on the CFPB's website and thus the Court may take judicial notice of its contents without converting this motion for judgment on the pleadings into a motion for summary judgment.  *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (holding that it was appropriate for the court to consider documents produced by the FDA "which were matters of public record directly relevant to the issue at hand" when ruling on a motion to dismiss).

The funds received from the Federal Reserve are deposited into the Bureau's Consumer Financial Protection Fund (the "Bureau Fund").  12 U.S.C. § 5497(b).  The Bureau Fund is used to finance all the CFPB's operations.[2]  12 U.S.C. § 5497(c)(1).  This funding regime was consciously designed to obviate Congressional review.

---

[2] In addition to the Bureau Fund, the CFPB has a second fund at the Federal Reserve comprised of the fines and penalties collected from the Bureau's enforcement actions (the "Civil Penalty Fund").  12 U.S.C. § 5497(d).  By statute, the CFPB may only use the Civil Penalty Fund to compensate the victims of activities that are the subject of CFPB enforcement actions, or, if victims cannot be located, to fund consumer education and financial literacy programs.  12 U.S.C. § 5497(d)(2).

**FIRSTCASH'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

12 U.S.C. §§ 5497(a)(2)(C) ("the funds derived from the Federal Reserve System pursuant to this subsection shall not be subject to review by the Committees on Appropriations of the House of Representatives and the Senate"); 5497(c)(2) ("Funds obtained by or transferred to the Bureau Fund shall not be construed to be Government funds or appropriated monies").   In fact, the CFPB's funding is twice removed from the Congressional appropriations process because the Federal Reserve is also self-funded, primarily by levies placed on banks within the Federal Reserve System.  12 U.S.C. § 243. While the CFPB may request additional funds through the standard federal appropriations process if its self-directed funding is insufficient, *see* 12 U.S.C. § 5497(e), it has never needed to do so.

## LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) may be brought "after the pleadings are closed" as long as it is brought "early enough not to delay trial."  Fed. R. Civ. P. 12(c).  Such a motion is appropriate "if the matter can be adjudicated by deciding questions of law rather than factual disputes."   *Peddy v. Aaron's, Inc.*, No. 18-1625, 2019 WL 763510, at *2 (E.D. La. Feb. 20, 2019) (citing *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002)); *see also Summit 6 LLC v. HTC Corp.*, No. 7:14-cv-00014-O, 2015 WL 11117867 , at *3 (N.D. Tex. May 28, 2015) (holding that it was appropriate to consider a motion for judgment on the pleadings when only questions of law were disputed).  A Rule 12(c) motion is subject to the same standards as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *Peddy*, 2019 WL 763510, at *2.

Courts within the Fifth Circuit can use (and have used) motions for judgment on the pleadings to decide constitutional issues like those presented here.  *See, e.g.*, *Troyer v. Allcat Claims, LLC*, No. 06-7821, 2007 WL 3275123, at *3-4 (E.D. La. Nov. 5, 2007) (holding that the National Flood Insurance Act did not violate the non-delegation doctrine

**FIRSTCASH'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

and therefore granting motion for judgment on the pleadings).  A motion for judgment on the pleadings, like a motion to dismiss, "may rest on resolution of a clearly determinative question of law."  *Ryan v. Flowerserve Corp.*, 444 F. Supp. 2d 718, 726 (N.D. Tex. 2006) (citation and alteration omitted).[3]

## ARGUMENT

## I.     THE CFPB'S STRUCTURE IS UNCONSTITUTIONAL.

### A.     The CFPB's Self-Funding Scheme Violates the Appropriations Clause

The CFPB's self-funding scheme violates the Appropriations Clause by permitting the Bureau to fund itself in perpetuity without Congressional approval or oversight.  The Appropriations Clause is a "straightforward and explicit command" that Congress shall have "*exclusive* power over the federal purse."  *Community Financial*, 2022 WL 11054082, at *13 (quoting *Richmond*, 496 U.S. at 424).  The CFPB's self-funding scheme violates that command.

The clear intent of the Appropriations Clause is to ensure that the Executive Branch's potential excesses are constrained in defense of individual liberty.  *See Community Financial*, 2022 WL 11054082, at *13 ("The Appropriations Clause thus does more than reinforce Congress's power over fiscal matters; it affirmatively obligates Congress to use that authority 'to maintain the boundaries between the branches and preserve individual liberty from the encroachments of executive power'") (quoting *All Am. Check Cashing*, 33 F.4th at 231); *U.S. Dep't of the Navy v. Fed. Labor Relations Auth.*, 665 F.3d 1339, 1347 (D.C. Cir. 2012) (Kavanaugh, J.) ("The Appropriations Clause is thus

---

[3] FirstCash believes that a motion for judgment on the pleadings is the appropriate procedural vehicle to raise this constitutional challenge, and so Local Rule 56.2(b) prohibiting the filing of more than one motion for summary judgment would not apply. *See also* July 13, 2022 Motion Hearing Tr. at 14:20-22 ("But I'm assuming you could construe a Rule 56 motion as a motion for judgment on the pleadings under 12(b)(1)." "I think that's right.").  Should, however, the Court determine that this motion is appropriately treated as a second motion for summary judgment, FirstCash respectfully requests that the Court grant FirstCash permission under Local Rule 56.2(b) to present these arguments, particularly given the fact that the Fifth Circuit's decision in *Community Financial* post-dates the filing of its prior Motion for Partial Summary Judgment.

**FIRSTCASH'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

a bulwark of the Constitution's separation of powers among the three branches of the National Government. It is particularly important as a restraint on Executive Branch officers").

In *Community Financial*, the plaintiffs (two financial industry groups) brought a challenge to the Bureau's 2017 Payday Lending Rule, 82 Fed. Reg. 54472 (Nov. 17, 2017). In relevant part, that rule prohibited lenders from initiating additional payment transfers from a customer's account after two consecutive attempts have failed for insufficient funds, absent new and specific authorization from the consumer. The plaintiffs challenged this rule on several fronts, including that the CFPB's self-funding scheme violated the Appropriations Clause.[4]  *Community Financial*, 2022 WL 11054082, at *4. In an opinion largely tracking Judge Jones' concurring opinion in *All American Check Cashing*, the Fifth Circuit held that the self-funding scheme violated the Appropriations Clause and the separation of powers principles that underlie it. *Id.* at *12-18. Tracing the historical origins of the Appropriations Clause and the separation of powers, the Fifth Circuit concluded that Congressional control over federal funding was an indispensable check on the Executive Branch and an important mechanism to ensure that the government remained accountable to the people. *See id.* at *12 ("First, [the Framers] viewed Congress's exclusive 'power over the purse' as an indispensable check on 'the overgrown prerogatives of the other branches of government' … [t]he Framers also believed that vesting Congress with control over fiscal matters was the best means of ensuring transparency and accountability to the people") (citations omitted). The concurring decision in *All American Check Cashing* reached the same conclusions. 33 F.4th at 231-32 ("[T]he Constitution arms Congress with and mandates that it use potent fiscal powers designed to maintain the boundaries between

---

[4] The other grounds were: (1) that the Payday Lending Rule violated the Administrative Procedures Act as arbitrary and capricious, (2) that the rule was promulgated by a Director unconstitutionally insulated from removal, and (3) that the CFPB's rulemaking authority violates the nondelegation doctrine. Both the District Court and the Fifth Circuit rejected these grounds.

**FIRSTCASH'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

the branches and preserve individual liberty from the encroachments of executive power … Congress's supremacy in fiscal matters makes the executive branch dependent on the legislative branch for subsistence, thereby forging a vital line of accountability between the executive branch and the legislative branch, and, therefore, the people.").

The CFPB's self-funding scheme casts aside this important bulwark.  *See Community Financial*, 2022 WL 11054082, at *15 ("Wherever the line between a constitutionally and unconstitutionally funded agency may be, this unprecedented arrangement crosses it.").  The CFPB Director—now directly accountable to the President post-*Selia Law*—unilaterally sets the Bureau's budget and may requisition hundreds of millions of dollars directly from the Federal Reserve without any oversight by, or reporting to, Congress.  *See id.* ("The Bureau's perpetual insulation from Congress's appropriations power … renders the Bureau 'no longer dependent and, as a result, no longer accountable' to Congress and, ultimately, to the people") (quoting *All Am. Check Cashing*, 33 F.4th at 232).  This lack of oversight is no mere hypothetical.  *See All Am. Check Cashing*, 33 F.4th at 234 (describing futile efforts by Congressional members to account for the CFPB's spending and policy priorities).  Where other agencies must "capitulate to [Congressional] demands or face blistering budget cuts," the CFPB evades such scrutiny.  *Id*.  This contradicts the core purpose of the Appropriations Clause.

But even if the Court were to find that some level of financial independence could pass constitutional muster, the CFPB's self-funding mechanism is in fact twice insulated from the Congressional appropriations process by virtue of the fact that it draws its funding from the Federal Reserve, an agency which itself is funded outside the federal appropriations process. *See Community Financial*, 2022 WL 11054082, at *39 ("Congress did not merely cede *direct* control over the Bureau's budget … [i]t also ceded *indirect control* by providing that the Bureau's self-determined funding be drawn from a source that is itself outside the appropriations process").  The Supreme Court rejected a similar

**FIRSTCASH'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

twice-removed oversight scheme in *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 495-96 (2010). *See also Community Financial*, 2022 WL 11054082, at *14 (describing the self-funding scheme as "a double insulation from Congress's purse strings that is unprecedented across the government"). In *Free Enterprise Fund*, the Court addressed the appointment scheme for the Public Company Accounting Oversight Board ("PCAOB"), an independent accounting standards board overseen by the Securities and Exchange Commission ("SEC"). The PCAOB consists of five board members. Originally, PCAOB board members were removable only for cause by the SEC, whose commissioners themselves are removable only for cause. The Supreme Court held that this double insulation from oversight by the elected branches (in this case, the President) violated the Constitution's Removal Clause and eliminated the requirement that PCAOB board members could only be removed for cause.

An agency with the "vast rulemaking, investigative, and adjudicatory authority" that the CFPB possesses poses a significant threat to individual liberty—precisely the issue that the Framers sought to remedy with the Appropriations Clause. *Selia Law*, 140 S. Ct. at 2191; *All Am. Check Cashing*, 33 F.4th at 231; *see also Community Financial*, 2022 WL 11054082, at *15 ("The constitutional problem is more acute because of the Bureau's capacious portfolio of authority"). The CFPB "acts as a mini legislature, prosecutor, and court," with authority to define, prosecute, and adjudicate numerous different statutes covering broad industry sectors which impact millions of Americans. *Selia Law*, 140 S. Ct. at 2202 n.8. The Fifth Circuit in *Community Financial* stated succinctly:

> An expansive executive agency insulated (no, double-insulated) from Congress's purse strings, expressly exempt from budgetary review, and headed by a single Director removable at the President's pleasure is *the epitome* of the unification of the purse and sword in the executive—an abomination the Framers warned "would destroy the division of powers on which political liberty is founded."

**FIRSTCASH'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

2022 WL 11054082, at *15 (quoting 2 THE WORKS OF ALEXANDER HAMILTON 61 (Henry Cabot Lodge ed. 1904)).

      The Bureau's argument that the CFPB is not the only agency funded outside the appropriations process misses this mark.  While there are a select few agencies that have some self-funding capabilities, none comes close to wielding the vast power of the CFPB.  The Bureau has pointed to agencies such as the Federal Reserve Board, the Federal Deposit Insurance Corporation ("FDIC"), and the Office of the Comptroller of the Currency ("OCC") as historical examples of the budgetary independence of financial regulators.  *See, e.g.*, *All Am. Check Cashing*, 33 F.4th at 235.  But these agencies are far more limited in both their authority and their mandate.  *See Community Financial*, 2022 WL 11054082, at *17.  The Federal Reserve controls interest rates to promote economic growth and stability.  The FDIC insures banks and examines the banks that it insures for structural soundness.  The OCC supervises national banks and federal savings institutions.  The Federal Reserve and the FDIC also both operate as independent agencies distinct from the Executive Branch.  *See* Markham S. Chenoweth & Michael P. DeGrandis, *Out of the Separation-of-Powers Frying Pan and Into the Nondelegation Fire: How the Court's Decision in* Selia Law *Makes the CFPB's Unlawful Structure Even Worse*, U. OF CHICAGO L. REV. ONLINE (Aug. 27, 2020), https://lawreviewblog.uchicago.edu/2020/08/27/seila-chenoweth-degrandis/.  The CFPB's vast authority stands alone.  It operates as "a mini legislature, prosecutor, and court, responsible for creating substantive rules for a wide swath of industries, prosecuting violations, and levying knee-buckling penalties against private citizens."  *Community Financial*, 2022 WL 11054082, at *15 (quoting *Selia Law*, 140 S. Ct. at 2202 n.8).  It is self-funded not by fees from users of its services, but by drawing funds from a third-party agency (that itself is not subject to the appropriations process).  There is no other self-funded agency that comes close to the level of authority of the CFPB possesses—and other federal agencies are already clamoring for the funding independence

**FIRSTCASH'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

and lack of oversight that the CFPB enjoys. *See All Am. Check Cashing*, 33 F.4th at 237 (citing statements by leadership of the Commodity Futures Trading Commission and SEC); *see also PHH Corp. v. CFPB*, 881 F.3d 75, 196 (D.C. Cir. 2018) (Kavanaugh, J., dissenting) ("we cannot think of this as a one-off case because we could not cabin the consequences in any principled manner") (discussing the CFPB's for-cause removal provision)), *abrogated by Selia Law*, 140 S. Ct. 2183.

An Executive agency with the broad authority possessed by the CFPB and effectively no congressional oversight is unprecedented in American history.[5] *See Community Financial,* 2022 WL 11054082, at *17 ("[T]he Bureau's express insulation from congressional budgetary review, single Director answerable to the President, and plenary regulatory authority combine to render the Bureau 'an innovation with no foothold in history or tradition.'") (quoting *Selia Law*, 140 S. Ct. at 2202); *All Am. Check Cashing*, 33 F.4th at 235 ("An executive, law-enforcement agency with complete fiscal independence is unprecedented").   This "'lack of historical precedent'" is a further indicator of the CFPB's constitutional infirmity.  *Id.* (quoting *Free Enterprise Fund*, 561 U.S. at 505).

> **B.**   **Prior Case Law Outside the Fifth Circuit Has Not Truly Grappled with the Serious Constitutional Issues Raised by the Self-Funding Scheme**

No court prior to the concurring decision in *All American Check Cashing* had truly grappled with the constitutional ramifications of the CFPB's self-funding scheme, a point re-emphasized by the Fifth Circuit in *Community Financial*.  *See Community Financial,* 2022 WL 11054082, at *16 n.15 (collecting cases).  Although the D.C. Circuit briefly

---

[5] This problem is exacerbated by the fact that Dodd-Frank also explicitly exempts the CFPB from oversight by the Executive Branch's Office of Management and Budget.  12 U.S.C. § 5497(a)(4)(E) ("This subsection may not be construed as implying any obligation on the part of the Director to consult with or obtain the consent or approval of the Director of the Office of Management and Budget with respect to any report, plan, forecast, or other information referred to in subparagraph (A) or any jurisdiction or oversight over the affairs or operations of the Bureau.").

**FIRSTCASH'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

discussed and upheld the constitutionality of the CFPB's self-funding apparatus as part of a much larger decision on the constitutionality of the CFPB's original director removal provision in *PHH Corp.*, 881 F.3d at 95-96, that decision looks very different in the post-*Selia Law* landscape. The D.C. Circuit based its holding on the idea that "the CFPB's independent funding source has no constitutionally salient effect on the President's power." *Id.* at 96. But in the aftermath of *Selia Law*—the outcome of which the majority decision in *PHH Corp.* simply got wrong—this is no longer the case. The President now directly controls the CFPB's budget and allocations, something that has never occurred before for an Executive Branch agency. *See All Am. Check Cashing*, 33 F.4th at 224 (stating that the CFPB post-*Selia Law* unconstitutionally unites the "powers of the purse and sword" in the Executive Branch); Chenoweth & DeGrandis, *supra*. Now that the CFPB Director is removable at will by the President, the Director's independence can no longer justify his or her unilateral ability to set the CFPB's budget and requisition funds from the Federal Reserve without any Congressional oversight. *See Community Financial,* 2022 WL 11054082, at *15 ("[T]he 'Director's newfound presidential subservience exacerbates the constitutional problem[] arising from the [Bureau's] budgetary independence.'") (quoting *All Am. Check Cashing*, 33 F.4th at 234).

The court in *PHH Corp.* also noted that the interplay between the for-cause removal provision and the self-funding provision do not "amplify each other in a constitutionally relevant way" and thus need not be considered together, distinguishing those provisions from the PCAOB's dual for-cause removal provisions rejected by the Supreme Court in *Free Enterprise Fund*. *PHH Corp.*, 881 F.3d at 96. But, as discussed above, the self-funding scheme does have such an unconstitutional amplification because the CFPB draws its funding from the Federal Reserve, which itself is not subject to Congressional appropriations. *See Community Financial,* 2022 WL 11054082, at *14. This is precisely the type of unconstitutional amplification that the Supreme Court rejected in *Free*

**FIRSTCASH'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

*Enterprise Fund.*  In short, the D.C. Circuit's brief consideration of this issue in *PHH Corp.* was off-base pre-*Selia Law* and is wholly inapplicable post-*Selia Law* now that the President controls the CFPB's purse strings.

The remaining District Court cases are similarly unpersuasive.  As Judge Jones notes in *All American Check Cashing* and Judge Wilson echoes in *Community Financial,* none of these decisions "seriously wrestles with the overwhelming separation of powers problem" raised by the CFPB self-funding scheme.  *All Am. Check Cashing*, 33 F.4th at 240.  Several predate *Selia Law* and the additional separation of powers issues raised by permitting the President (through the CFPB Director) to determine the Bureau's budget at his or her sole discretion.  Many of the district court decisions rely on *American Federation of Government Employees, AFL-CIO, Local 1647 v. Federal Labor Relations Authority*, 388 F.3d 405, 409 (3d Cir. 2004) for the proposition that Congress may choose to "loosen its own reins on public expenditure."  There is, however, a key distinction between other self-funding government agencies, such as the Federal Reserve and FDIC, and the CFPB (aside from the latter's much more expansive authority): these entities collect fees or assessments from the users of these programs to fund these specific programs.  They do not collect funds to enable operations at a third-party agency with vast enforcement and adjudicative authority over millions of people who are not the direct users of their programs.  *See* Chenoweth & DeGrandis, *supra*.  There is good reason that an Executive Branch agency with vast authority over an entire sector of the economy and the daily lives of millions of Americans has never been given the unilateral power to set its own budget, and the Court should not permit the CFPB to do so now.

**C.     Dismissal is the Appropriate Remedy.**

Given the unconstitutional funding structure of the CFPB, the only appropriate remedy is for the Court to dismiss this action against FirstCash in its entirety.  Without the funding that it unconstitutionally requisitioned from the Federal Reserve, the CFPB would

**FIRSTCASH'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

have been unable to begin, much less sustain, this enforcement action.  *See Community Financial,* 2022 WL 11054082, at \*18 ("without its unconstitutional funding, the Bureau lacked any other means to promulgate the rule"); *All Am. Check Cashing*, 33 F.4th at 241 ("An agency's funding is the very lifeblood that empowers it to act").  Because the funds that the CFPB used to initiate this action against FirstCash derive from an unconstitutional source, dismissal is the unavoidable remedy.  *See id.* at 242 ("Just as a government actor cannot exercise power that the actor does not lawfully possess, so, too, a government actor cannot exercise even its lawful authority using money the actor cannot lawfully spend"); *see also FEC v. NRA Political Victory Fund*, 6 F.3d 821, 828 (D.C. Cir. 1993) (holding that the FEC's structure violated the Appointments Clause and dismissing enforcement action).

As it was in *Community Financial*, the analysis of whether this litigation is the product of the constitutionally infirm CFPB funding is "straightforward."  2022 WL 11054082, at \*18; *see also id. at* n.17 (relying on the CFPB's quarterly "CFO Update" and line item accounting of "Research, Markets & Regulation" to show funding link to challenged rulemaking).  An analysis of the same publicly-available CFPB budget documents relied upon by the Fifth Circuit demonstrates unequivocally that the funding for its enforcement actions, including the instant case, comes from the constitutionally-tainted Bureau Fund.[6]  For example, the Bureau's most recent financial report notes that the CFPB draws from the offending "CFPB Fund" all monies needed for the Bureau's personnel compensation and benefits, rent, equipment, utilities, printing & reproduction, travel, transportation, supplies, and other critical operating expenses.  *See* CFPB, *CFO Update Through the Third Quarter of Fiscal Year 2022* (Aug. 23, 2022) at 2-3, https://files.consumerfinance.gov/f/documents/cfpb_cfo-update_report_fy-2022_q3.pdf.  In fact, the Bureau has spent just north of $118 million on its Supervision, Enforcement,

---

[6] As noted above, these documents are properly subject to judicial notice and may be considered in connection with a motion for judgment on the pleadings.

**FIRSTCASH'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

and Fair Lending division in FY2022 to date, all coming out of the Bureau Fund. *Id.* at 2. As Dodd-Frank requires, no money from the separate Civil Penalty Fund can be used to finance enforcement actions. *See id.* at 4-9. Again, no other sources of funding for CFPB expenditures exist. This is consistent with the broader-scale CFPB budget and strategy documents, which identify no source of funding that would be capable of supporting the Bureau's enforcement actions aside from the Bureau Fund, and the statutory provisions detailing the Bureau's funding requirements. *See* CFPB, *Annual Performance Plan and Report, and Budget Overview* (Feb. 2022), *supra*; 12 U.S.C. § 5497. The inescapable conclusion is that this lawsuit has been prosecuted with funding obtained in violation of the Constitution.

In short, by operation of the Dodd-Frank provisions that brought the CFPB into being, *see* 12 U.S.C. § 5497, the agency had no alternative, constitutionally permissible means of funding this litigation. Indeed, the Fifth Circuit concluded that the constitutional issues at play with respect to the CFPB's self-funding scheme cut to the core of the agency's ability to operate. *See Community Financial*, 2022 WL 11054082, at *18. In cases like this where there is a "linear nexus" between the constitutionally infirm provision and the challenged action, invalidation is the correct remedy. *See id.*; *see also All Am. Check Cashing*, 33 F.4th at 241 ("invalidation[] follows directly from the government actor's lack of authority to take the challenged action in the first place."). Both *Community Financial Services Association* and *All American Check Cashing* use essentially a "but-for" analysis linking the CFPB's unconstitutional funding and the challenged action. *See All Am. Check Cashing*, 33 F.4th at 241 ("All American is entitled to dismissal because the CFPB lacked the authority to use the funds necessary to pursue the enforcement action against All American"); *Community Financial*, 2022 WL 11054082, at *18 ("without its unconstitutional funding, the Bureau lacked any other means to promulgate the [Payday Lending Rule]").

**FIRSTCASH'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

Both *All American Check Cashing* and *Community Financial Services Association* agree that, unlike the for-cause removal provision, the unconstitutional source of the CFPB's operating budget cannot be remedied without invalidating the actions the Bureau took employing these funds.  *See Community Financial*, 2022 WL 11054082, at \*50 (holding that the Bureau's unconstitutional funding "literally *effected* the promulgation of the rule.  Plaintiffs are therefore entitled to 'a rewinding of [the Bureau's] action") (quoting *Collins v. Yellen*, 141 S. Ct. 1761, 1801 (2021) (Kagan, J., concurring in part)); *All Am. Check Cashing*, 33 F.4th at 242 ("as in cases involving Appointments Clause defects or other separation of powers problems with a government actor's authority to act, the proper remedy here is to disregard the government action").  Judge Jones' concurring opinion in *All American Check Cashing* specifically concludes that an enforcement action brought employing unconstitutionally appropriated funds should be dismissed.  *All Am. Check Cashing*, 33 F.4th at 242 ("because the CFPB funds the instant prosecution using unconstitutional self-funding, I would dismiss the lawsuit").

Because the CFPB could not lawfully spend the money it received from the Federal Reserve in violation of the Appropriations Clause, and because it has no other valid source of funding to support the preparation, filing or prosecution of this civil action, the unavoidable consequence is that this entire civil action must be invalidated from its inception, necessitating a dismissal as to all counts with prejudice, and entry of judgment in favor of FirstCash.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Court should grant this motion, dismiss this action against FirstCash in its entirety with prejudice, and enter judgment in favor of FirstCash.

Dated: October 24, 2022                    Respectfully submitted,

**FIRSTCASH'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

16

ALSTON & BIRD LLP

*/s/* Michael J. Agoglia
Robert C. Vartabedian
Texas State Bar No. 24053534

ALSTON & BIRD LLP
Bank of America Tower
301 Commerce Street, Suite 3635
Fort Worth, TX 76102
Telephone: 682-354-2003
Facsimile:  682-354-2299
rob.vartabedian@alston.com

Michael J. Agoglia
California State Bar No. 154810 (Admitted
*Pro Hac Vice*)
John Redding
California State Bar No. 149076 (Admitted
*Pro Hac Vice*)
ALSTON & BIRD LLP
560 Mission Street, Suite 2100
San Francisco, CA 94105-0912
Telephone: 415-243-1011
Facsimile:  415-243-1001
michael.agoglia@alston.com
john.redding@alston.com

*Attorneys for FirstCash, Inc. and
Cash America West, Inc.*

**FIRSTCASH'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that, on October 24, 2022, I caused a true and correct copy of this document to be served upon counsel of record for plaintiff Consumer Financial Protection Bureau via email. Copies were sent to counsel identified below.

Jacob A. Schunk
Lane C. Powell
Maxwell S. Peltz
Navid Vazire
Enforcement Attorneys
Consumer Financial Protection Bureau
jacob.schunk@cfpb.gov
lane.powell@cfpb.gov
maxwell.peltz@cfpb.gov
navid.vazire@cfpb.gov

         */s/ Michael J. Agoglia*
         Michael J. Agoglia

**FIRSTCASH'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**