UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**CONSUMER FINANCIAL
PROTECTION BUREAU,**

Plaintiff,

v.                                              **No. 4:21-cv-01251-P**

**FIRSTCASH, INC. ET AL.,**

Defendants.

## OPINION AND ORDER

Before the Court are Plaintiff's Motion to Strike (ECF No. 76) and Defendants' Motion for Partial Summary Judgment (ECF No. 80). After carefully reviewing both motions and the applicable law, the Court **GRANTS in part** Plaintiff's Motion to Strike and **DENIES** Defendants' Motion for Partial Summary Judgment.

## SUMMARY

The Military Lending Act sets limits on consumer loans to active-duty servicemembers and their dependents. 10 U.S.C. § 987. Paragraph (f)(5) of the Act gives covered borrowers a private right of action against lenders who violate those limits. *Id.* § 987(f)(5)(A). That paragraph also provides an affirmative defense to any lender who violates the Act through a mere "bona fide error." *Id.* § 987(f)(5)(D). The next paragraph empowers federal agencies like the Consumer Financial Protection Bureau ("CFPB") to enforce the Act's provisions. *Id.* § 987(f)(6).

These competing motions raise an issue of first impression: Is the "bona-fide-error defense" available in suits by federal agencies? The Court concludes that it is not for two reasons. *First*, the Act's bona-fide-error defense protects defendants from civil liability to a person (i.e., a covered borrower) only when the defendant violates the Act "with respect to" that person. Because a person cannot violate the Act "with

respect to" a federal agency, the bona-fide-error defense does not apply to a federal agency's claims. *Second*, the bona-fide-error defense protects against kinds of relief that are distinct from the relief that federal agencies are authorized to recover.

## PROCEDURAL BACKGROUND

The CFPB brought this action against FirstCash, Inc. and its subsidiaries (collectively, "FirstCash"). It alleges that FirstCash violated the Act and a 2013 administrative order issued against a predecessor to FirstCash. The CFPB further contends that FirstCash made pawn loans to active-duty servicemembers and their dependents (or "Covered Borrowers") that (1) charged interest rates exceeding the Act's 36% cap, (2) required arbitration in violation of the Act, and (3) failed to provide mandatory disclosures.

Specifically, the CFPB claims that between June 2017 and May 2021, FirstCash issued more than 3,600 prohibited loans to Covered Borrowers in multiple states, including Arizona, Nevada, Utah, and Washington. It also claims that FirstCash is bound by a 2013 administrative order prohibiting Defendant Cash America from future violations of the Act and FirstCash's conduct following its 2016 merger with Cash America constitutes a breach of that order.

In its answer, FirstCash asserts various affirmative defenses, including the bona-fide-error defense. The CFPB moves to strike the bona-fide-error defense under Rule 12(f), arguing that it is only available when a private party is the plaintiff. ECF No. 76. The CFPB also moves to strike FirstCash's sixth and eighth affirmative defenses, which purport to reserve rights. *Id.* FirstCash in turn moves for partial summary judgment, arguing that Rule 56 is a more appropriate vehicle for determining whether the bona-fide-error defense applies. ECF No. 80. FirstCash's motion also seeks summary judgment on the first three counts of the CFPB's complaint. FirstCash argues that the CFPB judicially admitted that it proceeds under a statute that would rob this Court of jurisdiction over those three claims. *Id.* Both motions are ripe for review. Because both motions turn on the same question of law, the Court takes them up together.

**LEGAL STANDARD**

Rule 12(f) allows a court to strike any "insufficient defense" from a pleading. FED. R. CIV. P. 12(f). Striking a defense is a handy way to dispose of patently insufficient defenses. *See C&C Inv. Props., LLC v. Trustmark Nat'l Bank*, 838 F.3d 655, 660–61 (5th Cir. 2016). Motions to strike are appropriate when a "defense is insufficient as a matter of law." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (internal citation omitted). But courts often frown upon motions to strike, and it is rare for courts in the Fifth Circuit to grant them. *See United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012). The Court of Appeals has instructed that a district court should "defer action" on a motion to strike when there exist "substantial questions of law," unless leaving the pleadings intact would prejudice the moving party. *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962).

Summary judgment is proper on a defense or part of a defense if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Nuziard v. Minority Bus. Dev. Agency*, —— F. Supp. 3d ——, No. 4:23-cv-00278-P, 2024 WL 965299, at *3 (N.D. Tex. Mar. 5, 2024). The court must deny summary judgment if there remains any genuine issue of material fact. *Equal Emp. Opportunity Comm'n v. Rock-Tenn Servs. Co., Inc.*, 901 F. Supp. 2d 810, 814. (N.D. Tex. 2012) (internal citations omitted). When a party moves for summary judgment on its own affirmative defense, it must "establish beyond all peradventure all the essential elements of the defense." *Id.* at 15 (polished).

**ANALYSIS**

At the outset, the parties spill about fifteen pages' worth of ink debating which "procedural vehicle" (i.e., a motion to strike pleadings or for summary judgment) the Court should use to decide the single legal question here. But because both motions seek other relief besides a decision on the legal issue, the Court will take up each motion in turn instead of discussing the parties' lengthy procedural arguments.

## A. FirstCash's Motion for Summary Judgment

FirstCash moves for summary judgment on the availability of its bona-fide-error defense and on the CFPB's first three claims. The Court discusses each in turn.

1. <u>FirstCash is not entitled to judgment as a matter of law on the bona-fide-error defense.</u>

As discussed above, the bona-fide-error defense protects defendants who violate the Act unintentionally and as a result of "a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 10 U.S.C. § 987(f)(5)(D). FirstCash asks the Court to "reject the CFPB's claim that the bona fide error defense is unavailable as a matter of law and enter partial summary judgment in favor of FirstCash on that issue." ECF No. 81 at 20.

But FirstCash does not even argue, let alone prove, that it is entitled to judgment as a matter of law on any element of its bona-fide-error defense. FirstCash does not attach evidence to its motion for partial summary judgment to support any essential facts of the defense. *See* ECF No. 81. Instead, FirstCash simply argues that, as a legal matter, the bona-fide-error defense should be available in actions like this one. For that reason, partial summary judgment would be inappropriate on its face even if the bona-fide-error defense did apply.

While it is true that Rule 56(a) allows a party to move for summary judgment on "part of a . . . defense," FED R. CIV. P. 56(a), courts have not interpreted that phrase the way FirstCash does. Instead, courts have given meaning to the word "part" in Rule 56 by (a) granting some, but not all, of the relief sought in a single claim or (b) resolving fewer than all the legal issues relevant to a claim. For example, in a 1981 decision from the Western District of Missouri, the district court granted summary judgment for $13,427.02 in commissions—even though the plaintiff sought more for that claim—because the defendant admitted that he owed that amount. *Blackford v. Action Prods. Co., Inc.*, 92 F.R.D. 79, 79–80 (W.D. Mo. 1981). And in a 1993 decision from the Eastern District of Michigan, the court granted summary judgment on the first

of two essential elements of the plaintiff's claim when that element was satisfied "beyond doubt." *Fr. Stone Co., Inc. v. Charter Twp. of Monroe*, 790 F. Supp. 707, 708–10 (E.D. Mich. 1992). Those examples stand in contrast to FirstCash's motion here, which seeks nothing more than an advisory opinion from this Court that the bona-fide-error defense is applicable against a federal agency.

FirstCash relies on two other cases to support its proposed use of summary judgment as a vehicle to present its argument to the Court, but both fall short.

*First,* in *L.C. Eldridge Sales Co. v. Azen Mfg. Pte. Ltd.*, the court granted partial summary judgment, finding that the Patent Act applied to certain rigs. No. 6:11CV599, 2013 WL 7964028 (E.D. Tex. Nov. 14, 2013), *aff'd in part sub nom. L.C. Eldridge Sales Co., Ltd. v. Jurong Shipyard Pte., Ltd.*, 610 Fed. App'x 1015 (Fed. Cir. 2015). For the Patent Act to apply, the rigs had to be "attached to the seabed," *Id.* at *1, which no party disputed. Because there was no fact issue on that threshold question, partial summary judgment was appropriate. Here, though, FirstCash has presented no facts that would dispose of any essential elements of the bona-fide-error defense.

*Second*, in *United States ex rel. King v. Solvay S.A.*, the court granted partial summary judgment that the defense of waiver and estoppel was unavailable. 304 F.R.D. 507, 511–12 (S.D. Tex. 2015). But the court did not hold that the affirmative defense was unavailable *as a matter of law. Id.* at 512. The defendant simply had not produced facts justifying the use of that defense against the United States *in that instance. Id. Solvay* therefore does not help FirstCash.

These decisions are thus inapplicable to the question presented to the Court. The Court **DENIES** FirstCash's motion for partial summary judgment on the bona-fide-error defense.

2. The CFPB did not make "judicial admissions" that rob the Court of jurisdiction.

Summary judgment is also unwarranted for the first three counts of the CFPB's complaint. FirstCash argues that the CFPB may not pursue

its Military Lending Act[1] claims because it "admitted" that it relies on the enforcement provisions of the Consumer Financial Protection Act (the "Consumer Act") and the Truth in Lending Act (the "Truth Act"). ECF No. 81 at 18–19; *see* ECF No. 44.[2] Because the first three counts of the Amended Complaint seek relief under the Military Lending Act (ECF No. 51 at 8–10), FirstCash argues that the CFPB's statements are "judicial admissions" that "eliminate jurisdiction" over those claims (ECF No. 81 at 19):

> Simply put, the CFPB has admitted that it is only relying on the enforcement authority of the [Consumer Act] to bring its claims here. But the plain text of the [Consumer Act] does not give the agency the jurisdiction to bring, or this Court to hear, those claims. As such, the Court must dismiss Counts 1–3 for lack of jurisdiction.

This argument is a red herring. It is irrelevant that the Consumer Act does not empower the CFPB to enforce the Military Lending Act— the Military Lending Act itself empowers the CFPB to enforce its provisions *using* the Consumer Act. Specifically, paragraph (f)(6) of the Military Lending Act says the Act's "provisions . . . shall be enforced by the agencies specified in section 108 of the Truth in Lending Act (15 U.S.C. 1607) in the manner set forth in that section or under any other applicable authorities available to such agencies by law." 10 U.S.C. § 987(f)(6). The meaning of the phrase "in the manner set forth in that section" therefore directly encompasses the powers given to the CFPB to enforce the Truth Act in Section 108. *Id.* Section 108 of the Truth Act, in turn, empowers the CFPB to enforce *its* provisions under the Consumer Act. 10 U.S.C. § 1607. The Consumer Act is therefore another "applicable authorit[y] available to" the CFPB. 10 U.S.C. § 987(f)(6). To enforce the Military Lending Act "in the manner set forth" in Section 108 of Truth Act means to use the same powers the CFPB has to enforce

---

[1] The title is written out in this subsection to avoid confusion.

[2] The Bureau made this statement in an earlier brief before it filed its Amended Complaint, which restarted this round of briefing.

the Truth Act—including the Consumer Act. By the plain text of (f)(6), then, the CFPB may enforce the Military Lending Act by means of the Consumer Act. To argue that the CFPB is judicially estopped from pursuing its Military Lending Act claims requires FirstCash to willfully close its eyes to paragraph (f)(6) and the statutes it refers to. FirstCash's argument on this point—unlike its arguments on the bona-fide-error defense—is frivolous.[3] The Court **DENIES** FirstCash's motion for partial summary judgment on the first three counts of the CFPB's complaint.

## B. The CFPB's Motion to Strike

1. <u>A motion to strike is procedurally proper because the availability of the bona-fide-error defense is a question of law only.</u>

Before analyzing the text of the Act, the Court must first decide whether a motion to strike is procedurally prudent. The Court concludes that it is. As discussed above, courts usually disfavor motions to strike. *Coney*, 689 F.3d at 379. That is "[p]artly because of the practical difficulty of deciding cases without a factual record." *Augustus*, 306 F.2d at 868 (internal citation and quotation omitted). But that concern falls by the wayside in cases like this one, in which a factual record would not make the Court's interpretation of the Act any easier. Whether the bona-fide-error defense is available in agency enforcement actions is a pure question of law. And motions to strike are most fitting when "the defense in issue is invalid as a matter of law." *Johnson v. Am. Airlines, Inc.*, 487 F. Supp. 1343, 1344 (N.D. Tex. 1980).

In addition, striking a legally doomed defense is efficient. If the defense remains in play longer than it should, the parties will waste money and time on discovery and will almost certainly delay the

---

[3]An attorney who files a brief implicitly certifies to the Court that the legal arguments in it are "warranted by existing law or by a *nonfrivolous* argument for extending, modifying, or reversing existing law[.]" FED. R. CIV. P. 11(b). Attorneys who violate Rule 11(b) are subject to sanctions. FED. R. CIV. P. 11(c) (emphasis added).

resolution of the case. Under these circumstances, Rule 12(f) is useful and fitting.

Besides, FirstCash's procedural objection to the motion to strike falls flat given that it moved for summary judgment on the same legal question. If the CFPB had not moved to strike but instead moved for summary judgment as FirstCash did, the posture of the case would be no different. Nowhere does FirstCash indicate how, if at all, the Court's legal standard would change between the two motion types. Nor does FirstCash explain how an order striking the bona-fide-error defense would be more prejudicial than summary judgment for the CFPB. The bottom line is that both parties ask the Court to rule on a pure question of law without a factual record. The Court will therefore do what both parties request and proceed to analyze the text of the Act.

2. The bona-fide-error defense does not protect defendants from liability in agency enforcement actions.

As always, we start with the words of the statute. *Henson v. Santander Consumer USA Inc.,* 582 U.S. 79, 83 (2017). Whether the bona-fide-error defense applies to federal agency enforcement actions depends on the language of the Act and nothing else. The words enacted by Congress control the outcome; Congress's perceived policy goals do not. *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022). Nor can other considerations, such as pragmatism or the desirability of a given outcome, override the plain meaning of the text. *United States v. Martino*, 681 F.2d 952, 961 (5th Cir. 1982); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 352–54 (2012) (consequences of a decision are not a key to sound interpretation). The Court gives words their normal contextual meanings using normal rules of interpretation. *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004). In interpreting subparagraph (f)(5)(D) of the Act, the Court endeavors to read the whole statute contextually, giving effect to every word, clause, and sentence. *Fischer v. United States*, 144 S. Ct. 2176, 2183 (2024). But the context of (f)(5)(D) stretches beyond Section 987; it also includes other statutes that Section alludes to. *See United States v. Marshall*, 798 F.3d 296, 309 (5th Cir. 2015) (internal citations

omitted) (courts should read multiple statutes in harmony with each other); *see also Nat'l Ass'n of Priv. Fund Managers v. Sec. & Exch. Comm'n*, 103 F.4th 1097, 1111 (5th Cir. 2024) (internal citation omitted) (statutes *in pari materia* are read harmoniously). Because the Act incorporates the Truth Act and the Consumer Act, those statutes are part of the context of subparagraph (f)(5)(D).

The first three subsections of the Act limit the interest that can be charged in consumer loans to Covered Borrowers and create mandatory disclosures. Subsections (d), (e), and (g) through (i) are not relevant.

Subsection (f), the portion under dispute, provides remedies for violations of the Act. It reads in relevant part:

> **(f) Penalties and remedies.—**
>
> **(1) Misdemeanor.**—A creditor who knowingly violates this section shall be fined as provided in title 18, or imprisoned for not more than one year, or both.
>
> [. . .]
>
> **(5) Civil liability.—**
>
> **(A) In general.**—A person who violates this section with respect to any person is civilly liable to such person for—
>
>> **(i)** any actual damage sustained as a result, but not less than $500 for each violation;
>>
>> **(ii)** appropriate punitive damages;
>>
>> **(iii)** appropriate equitable or declaratory relief; and
>>
>> **(iv)** any other relief provided by law.
>
> [. . . ]
>
> **(D) Defenses.**—A person may not be held liable for civil liability under this paragraph if the person shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Examples of a bona fide error include clerical, calculation, computer malfunction

and programming, and printing errors, except that an error of legal judgment with respect to a person's obligations under this section is not a bona fide error.
[. . .]

**(6) Administrative enforcement.**—The provisions of this section (other than paragraph (1) of this subsection) shall be enforced by the agencies specified in section 108 of the Truth in Lending Act (15 U.S.C. 1607) in the manner set forth in that section or under any other applicable authorities available to such agencies by law.

Consider the language of the bona-fide-error defense carefully. Subparagraph (f)(5)(D) provides that a "person may not be held liable for civil liability under this paragraph if the person shows" the necessary facts. If a defendant can show those facts, it avoids "civil liability under this paragraph"—that is, civil liability under paragraph (5).

What is civil liability under paragraph (5)? Consider subparagraph (5)(A) above: "A person who violates this section with respect to any person is civilly liable to such person" for actual damages, punitive damages, equitable or declaratory relief, and "any other relief provided by law." *Id.* § 987(f)(5)(A). Liability under paragraph (5) is liability *to* a class of persons *for* the kinds of relief listed. For the bona-fide-error defense to apply, then, the defendant must be trying to avoid liability *to* that class of persons *for* those kinds of relief.

Paragraph (f)(5) describes liability *to* no one else but Covered Borrowers. "A person who violates this section with respect to any person is civilly liable to such person[.]" *Id.* § 987(f)(5)(A). To "violate[] this section" is to make a consumer loan prohibited by the Act. The phrase "with respect to" means "in relation to." *Respect*, MERRIAM-WEBSTER.COM. A lender violates the Act "with respect to" or "in relation to" a person when it makes a prohibited consumer loan to that person. The lender then becomes liable to "such person." The adjective "such" in this context means "of the same class, type, or sort." *Such*, MERRIAM-WEBSTER.COM. It restricts the word "person" to the category of persons previously indicated. So "such person" means "any person" with respect

10

to whom the creditor violated the Act. Putting it all together, "civil liability under" paragraph (5) must be *a creditor's liability to a Covered Borrower to whom the creditor made a prohibited loan*. That kind of liability is what the bona-fide-error defense protects against.

Therefore, even if an agency can be a "person" within the meaning of the Act, it cannot be the type of person to whom a creditor is liable in (f)(5)(A). Subparagraph (f)(5)(A) makes a creditor liable not just to any person but "to *such* person"—that is, to the person to whom the creditor made a prohibited loan. Logically, that person cannot be an agency. Agencies do not serve in the armed forces, nor (the Court presumes) do they take out pawn loans. Because the bona-fide-error defense protects only against "civil liability under this paragraph," and "this paragraph" makes lenders liable only to Covered Borrowers, the defense protects creditors only from liability to Covered Borrowers. The bona-fide-error defense, therefore, does not protect against liability to an administrative agency.

Liability under paragraph (f)(5) is also limited to liability *for* the kinds of relief listed in that paragraph. *Id.* § 987(f)(5)(A). That list includes actual damages, punitive damages, equitable or declaratory relief, and "any other relief provided by law." *Id.* The bona-fide-error defense thus protects defendants specifically from being held liable *for* the kinds of relief listed in subparagraph (f)(5)(A).

Liability in an agency enforcement action is not liability *for* those kinds of relief. When an agency like the CFPB brings a civil action to enforce the Act, it seeks a completely different—and in fact mutually exclusive—set of remedies. As discussed above, the CFPB enforces the Act's provisions under the Consumer Act. *Id.* § 987(f)(6); 15 U.S.C. § 1607(a)(6). The Consumer Act provides a set of remedies to agencies. 12 U.S.C. § 5565(a)(2). Some of those remedies overlap with those in the Act—for example, payment of damages and equitable relief. *Compare* 10 U.S.C. § 987(f)(5)(A) *with* 12 U.S.C. § 5565(a)(2). But (f)(5)(A) enables plaintiffs to recover punitive damages, while the Consumer Act explicitly disallows agencies to recover punitive damages. 12 U.S.C. § 5565(a)(3). Because those lists are mutually exclusive, actions by the

CFPB cannot result in the relief provided in (f)(5)(A). But those kinds of relief are the only ones the bona-fide-error defense applies to.

For the bona-fide-error defense to apply, the CFPB must be seeking to impose liability *to* Covered Borrowers *for* the kinds of relief in (f)(5)(A. FirstCash argues the CFPB is doing just that by seeking restitution "to consumers." ECF No. 81 at 7. That is wrong for two reasons. *First*, FirstCash's argument would only apply to one remedy the CFPB asks for: restitution to consumers. ECF No. 51 at 11. The rest of the relief it asks for, such as civil penalties and costs, could not be characterized as liability *to* Covered Borrowers, so it would fall outside the scope of the bona-fide-error defense. *Second*, even if restitution could be characterized as liability *to* covered borrowers, it is still not liability *for* the relief provided in the Act. The CFPB's power to require lenders to make restitution comes from the Consumer Act, and the bona-fide-error defense only applies to liability for the remedies in (f)(5). Even though the CFPB may be said to stand in the shoes of consumers by seeking restitution on their behalf, it is still imposing a different kind of liability than that described in paragraph (f)(5).

\* \* \*

The bona-fide-error defense shields lenders from liability *to* Covered Borrowers *for* the remedies in (f)(5)(A). But agency enforcement actions impose liability *to* a different kind of plaintiff *for* a different kind of relief. Therefore, the bona-fide-error defense is not available to defendants in federal agency enforcement actions under the Act.

a. The exception of paragraph (f)(1) from agency enforcement does not entail that the bona-fide-error defense applies.

Paragraph (f)(6) empowers agencies to enforce all the Act's provisions except for paragraph (f)(1), which imposes misdemeanor-level criminal penalties on persons who "knowingly" violate the Act. 10 U.S.C. § 987(f)(6). FirstCash argues that because the statute makes an exception for paragraph (f)(1) only, subparagraph (f)(5)(D) is implicitly included in agency enforcement actions. ECF No. 81 at 8–10. Congress

12

"knew perfectly well how to except specific parts of [the Act] from the purview of agency enforcement" but did not do so with the bona-fide-error defense. *Id.* at 9. Therefore, FirstCash argues, the bona-fide-error defense applies in agency enforcement actions. Because (f)(6) uses the mandatory word "shall," FirstCash contends that the CFPB has no discretion to pick and choose which parts of the Act to bring to the table.

To see why that argument fails, consider an analogy to the hearsay rule. Suppose a trial attorney in a trademark case needs to prove that the defendant's infringement was likely to cause confusion. *See* 15 U.S.C. § 1114(1). The attorney offers an email from a customer that reads: "I had a bad experience with this product I bought from the plaintiff." The attorney elicits testimony from another witness that the product was actually sold by the defendant using the plaintiff's trademark. At first glance, the email is an out-of-court statement that does not meet any of the hearsay exceptions listed in Rule 803 of the Federal Rules of Evidence. *See* FED. R. CIV. P. 803. But it is still not hearsay. It is not offered to prove the truth of the matter asserted (that the customer had a bad experience). It is offered to prove the customer was confused. Like the exclusions in Rule 801(d), the email does not need to fit an exception because it is not covered by the definition of hearsay to begin with. *See* FED. R. CIV. P. 801; *see also Cross Trailers, Inc. v. Cross Trailer Mfg. and Sales, LLC*, 363 F. Supp. 3d 774, 785 (W.D. Tex. 2018). It is excluded, not excepted.

In the same way, the bona-fide-error defense does not need to be carved out by any exception because, on its own terms, it cannot apply in agency enforcement actions. Assuming that (f)(5)(D) falls within the "purview of agency enforcement," it still cannot help FirstCash here. As discussed above, the bona-fide-error defense is only a defense against liability *to* a Covered Borrower to whom a lender made a prohibited loan. The CFPB is not a Covered Borrower seeking to impose that kind of liability. Therefore, it does not matter that (f)(5)(D) falls within the general provisions the CFPB is tasked with enforcing; it simply cannot logically apply to the CFPB's claims.

b. The similarity between the Military Lending Act and the Fair Debt Collection Practices Act only strengthens the Court's conclusion.

FirstCash compares the Act to similar consumer protection laws and points out that similarly worded defenses in those statutes have been held to apply in agency actions. ECF No. 81 at 15–18. For example, consider the Fair Debt Collection Practices Act (the "Collection Act"). 15 U.S.C. §§ 1692 *et seq.* Like the Act, the Collection Act regulates consumer finance and authorizes federal agencies to enforce "compliance with any requirements imposed under this subchapter." 15 U.S.C. § 1692*l*. (Unlike the Act, which is comprised of only one "section" of the Code, the Collection Act includes an entire "subchapter." *See* 15 U.S.C., ch. 41, subch. V: "Debt Collection Practices.")

The Collection Act has its own bona-fide-error defense, codified at 15 U.S.C. § 1692k(c), which is identical to (f)(5)(D) with two exceptions. *First*, 1692k(c) uses "debt collector" where (f)(5)(D) uses "person." *Second*, where (f)(5)(D) says "liable for civil liability under this paragraph," 1692k(c) says "liable in any action brought under this subchapter." The two statutes appear side by side below with differences underlined.

| Military Lending Act | Fair Debt Collection Practices Act |
|---|---|
| A person may not be held liable for civil liability under this paragraph if the person shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.<br><br>10 U.S.C. § 987(f)(5)(D). | A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.<br><br>15 U.S.C. § 1692k(c). |

14

In a non-binding decision, the District Court for the Western District of North Carolina held that under the "plain language of § 1692k(c)," the defense "applies to agency enforcement actions." *Fed. Trade Comm'n v. Swatsworth*, No. 3:17-cv-340-GCM, 2018 WL 4016312, at *10 (W.D.N.C. Aug. 22, 2018). Although the Court takes no specific issue with the *Swatworth* court's reasoning, it is inapposite here. The differences between the Act and the Collection Act distinguish the result in that case. 1692k(c) provides a defense to "any action brought under this subchapter," i.e., the entire Collection Act. In contrast, (f)(5)(D) only applies to "civil liability under this paragraph," i.e., the paragraph on private civil suits. Although the statutes are otherwise similar, that slight difference is fatal to FirstCash's argument.

The Court **GRANTS** the CFPB's motion to strike the bona-fide-error defense from FirstCash's answer.

### 3. The Court does not strike FirstCash's sixth and eighth affirmative defenses.

The CFPB also moves to strike FirstCash's sixth and eighth affirmative defenses, which purport to reserve rights to amend its answer. ECF No. 77 at 6–7; ECF No. 53 at 14–15. The CFPB has not explained how, if at all, the existence of those defenses causes prejudice. A "reservation of rights within an answer is essentially meaningless," but it "does not prejudice Plaintiff in any way." *Mosser v. Aetna Life Ins. Co.*, No. 4:15-cv-00430-ALM-KPJ, 2018 WL 3301808 (E.D. Tex. Mar. 9, 2018), *report and recommendation adopted*, No. 4:15-cv-00430, 2018 WL 1517032 (E.D. Tex. Mar. 28, 2018). While FirstCash's sixth affirmative defense is more properly raised in a motion to amend, *Lorenzen v. Arch Ins. Co.*, No. 3:06-cv-0219-P, 2006 WL 8437697, at *4 (N.D. Tex. June 21, 2006), leaving the defense in the answer does no harm to the CFPB or to the case. If FirstCash wants to amend its answer, it still must move for leave to do so. Because there is not good cause to strike FirstCash's sixth and eighth affirmative defenses, the CFPB's Motion is **DENIED** in that respect.

## CONCLUSION

The bona-fide-error defense protects against "civil liability under this paragraph." Civil liability "under this paragraph" means the liability described in (f)(5)(A)—liability for civil damages to a person to whom the lender made a prohibited loan. Logically and based upon the text, that person can only be a Covered Borrower. Therefore, the bona-fide-error defense does not apply in actions for civil penalties brought by the CFPB or other federal agencies.

The Court therefore **GRANTS** the CFPB's Motion to Strike (ECF No. 76) in part and **STRIKES** FirstCash's Fourth Affirmative Defense from its Answer (ECF No. 53). The CFPB's Motion to Strike is otherwise **DENIED**. The Court **DENIES** FirstCash's Motion for Summary Judgment (ECF No. 80).

**SO ORDERED** on this **7th day of November 2024.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE