IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CONSUMER FINANCIAL PROTECTION
BUREAU,

    Plaintiff,

v.

FIRSTCASH, INC., ET AL.,

    Defendants.

No. 4:21-cv-01251-P

## STIPULATED FINAL JUDGMENT AND ORDER

The Consumer Financial Protection Bureau (Bureau) commenced this civil action on November 12, 2021, and filed its Amended Complaint on June 21, 2022, to obtain injunctive and monetary relief, and civil penalties from FirstCash, Inc.; Cash America West, Inc.; FCFS AL, Inc.; Cash America East, Inc.; Cash America Inc. of Alaska; Georgia Cash America, Inc.; FCFS IN, Inc.; FCFS TN, Inc.; FCFS OH, Inc.; FCFS KY, Inc.; Cash America, Inc. of Louisiana; FCFS MO, Inc.; Cash America of Missouri, Inc.; Cash America, Inc. of North Carolina; FCFS NC, Inc.; FCFS OK, Inc.; FCFS SC, Inc.; Pawn TX, Inc.; Cash America Pawn L.P.; and Cash America Advance, Inc. The Amended Complaint alleges violations of the Military Lending Act, 10 U.S.C. § 987, and its implementing regulation, 32 C.F.R. pt. 232 (collectively, MLA), in addition to a Bureau Consent Order and section 1036(a) of the Consumer Financial Protection Act of 2010, 12 U.S.C. § 5536(a)(1)(A) (CFPA), in connection with Defendants' issuance of pawn loans to active-duty servicemembers and their dependents.

The Bureau and Defendants agree to entry of this Stipulated Final Judgment and Order (Order), without adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Amended Complaint.

1

## FINDINGS

1. The Court has jurisdiction over the parties and the subject matter of this action.

2. For purposes of this Order, Defendants neither admit nor deny the allegations in the Amended Complaint, except Defendants admit the facts necessary to establish the Court's jurisdiction over them and the subject matter of this action.

3. Defendants waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order. Each Party agrees to bear its own costs and expenses, including, without limitation, attorneys' fees.

4. Entry of this Order is in the public interest.

## DEFINITIONS

5. The following definitions apply to this Order:

 a. "**Affected Consumers**" includes any consumer who, between October 3, 2016, and six months after the Effective Date, and as exclusively determined through the processes set forth in paragraph 20 of this Order, met the definition of "covered member" or "dependent" in 10 U.S.C. § 987 or a "covered borrower" in 32 C.F.R. § 232.3 (collectively, Covered Borrower), and who, while meeting the definition of a Covered Borrower, took out a pawn loan from Defendants either with (1) a Military Annual Percentage Rate (MAPR), 32 C.F.R. §§ 232.3(p) and 232.4, exceeding 36 percent, (2) a mandatory arbitration provision, or (3) disclosures that failed to meet the disclosure requirements of the MLA, including the requirement that each loan include a statement of the MAPR applicable to the loan, 10 U.S.C. § 987(c)(1)(A); 32 C.F.R. § 232.6(a)(1).

b. "**Board**" means Defendant FirstCash, Inc.'s duly elected Board of Directors.

c. "**Clearly and Prominently**" means:

    i. for textual communications (e.g., printed publications or words displayed on the screen of an electronic device), the disclosure must be of a type size and location sufficiently noticeable for an ordinary consumer to read and comprehend it, in print that contrasts with the background on which it appears; and

    ii. in all instances, the disclosure must be presented before the consumer incurs any financial obligation, in an understandable language and syntax, and with nothing contrary to, inconsistent with, or in mitigation of the disclosures used in any communication with the consumer.

d. "**Defendants**" means FirstCash, Inc.; Cash America West, Inc.; FCFS AL, Inc.; Cash America East, Inc.; Cash America Inc. of Alaska; Georgia Cash America, Inc.; FCFS IN, Inc.; FCFS TN, Inc.; FCFS OH, Inc.; FCFS KY, Inc.; Cash America, Inc. of Louisiana; FCFS MO, Inc.; Cash America of Missouri, Inc.; Cash America, Inc. of North Carolina; FCFS NC, Inc.; FCFS OK, Inc.; FCFS SC, Inc.; Pawn TX, Inc.; Cash America Pawn L.P.; and Cash America Advance, Inc., and their successors and assigns, individually, collectively, or in any combination.

e. "**Effective Date**" means the date on which the Order is entered by the Court on the docket.

f. "**Enforcement Director**" means the Enforcement Director of the Enforcement Division for the Bureau, or their delegate.

g. "**Related Consumer Action**" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency

3

brought against Defendants based on substantially the same facts as described in the Amended Complaint.

## CONDUCT PROVISIONS

## I.

### Prohibition on MLA-Violative Products or Services

**IT IS ORDERED** that:

6.    For a period of five years from the Effective Date, Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who receive actual notice of this Order, whether acting directly or indirectly, in connection with pawn transactions or other loans, may not violate the MLA, including by extending, servicing, or collecting on consumer loans to Covered Borrowers that:

   a. do not comply with the MLA's cap on allowable interest rates, 10 U.S.C. § 987(b); 32 C.F.R. § 232.4(b);

   b. do not comply with the MLA's prohibition on mandatory arbitration provisions, 10 U.S.C. § 987(e)(3); 32 C.F.R. § 232.8(c);

   c. do not comply with the MLA's requirement that, before any credit is issued to Covered Borrowers, Covered Borrowers be provided orally and in writing a statement of the MAPR applicable to the credit extension, all disclosures required by the Truth in Lending Act (15 U.S.C. § 1601 *et seq*.) and Regulation Z (12 C.F.R. pt. 1026), and a clear description of all payment obligations. 10 U.S.C. § 987(c), 32 C.F.R. § 232.6.

7.    Nothing in paragraph 6 imposes liability under the MLA on any person or entity for consumer loans made in compliance with paragraphs 8 or 9 below.

## II.
## REQUIRED CONDUCT

**IT IS FURTHER ORDERED** that:

8.     Defendants must, starting no later than six months after the Effective Date and continuing until at least five years and six months after the Effective Date, do either or both of the following:

    a. utilize for all pawn-loan transactions a regulatory safe harbor promulgated by the Department of Defense, currently found at 32 C.F.R. § 232.5(b); or

    b. Clearly and Prominently advertise to all borrowers and offer to Covered Borrowers an MLA-compliant pawn-loan product in accordance with the requirements set forth in Paragraph 9.

9.     If Defendants elect to comply with this Order by offering an MLA-compliant pawn-loan product pursuant to Paragraph 8(b), Defendants must meet each of the following requirements:

    a. the MLA-compliant pawn-loan product must include repayment terms that comply with the MLA's limits on allowable interest rates, 10 U.S.C. § 987(b); 32 C.F.R. § 232.4(b);

    b. the MLA-compliant pawn-loan product does not:

        i. require the borrower to waive rights to legal recourse under otherwise applicable State or Federal law, including the Servicemembers Civil Relief Act;

        ii. include a demand for unreasonable notice from the borrower as a condition of legal action;

        iii. include any mandatory arbitration provisions or impose onerous legal notice provisions in the case of a dispute;

        iv. roll over, renew, repay, refinance, or consolidate any consumer credit extended to the borrower by Defendants with the proceeds of other credit

5

                 extended to the same covered borrower or a dependent;

     v. use a check or other method of access to a deposit, savings, or other financial account maintained by the borrower, or the title of a vehicle as security for the obligation;

     vi. require as a condition of the transaction that the borrower establish an allotment to repay an obligation; or

     vii. prohibit the borrower from prepaying the loan or charge a penalty or fee for prepaying all or part of the loan.

  c. the contractual documentation associated with the MLA-compliant pawn-loan product must Clearly and Prominently display all MLA-required disclosures;

  d. Defendants must Clearly and Prominently post the signage in Exhibit A within each of their stores;

  e. Defendants must require, and execute through effective policies, procedures, and training, the use of the MLA Compliant Product Intake Procedure provided in Exhibit B;

  f. These requirements will apply to only Defendants' stores within the United States that offer a pawn product.

10.    On a semi-annual basis starting no later than nine months after the Effective Date, and continuing through five years and six months after the Effective Date, Defendants must conduct a documented assessment of Defendants' pawn-loan practices for compliance with each of the requirements in Paragraphs 8 and 9.

11.    The Bureau will consider loans issued with the terms identified in Paragraphs 8 or 9 to comply with the requirements of the Military Lending Act.

## III.
## ROLE OF THE BOARD AND EXECUTIVES

**IT IS FURTHER ORDERED** that:

12.     The Board has the ultimate responsibility for ensuring that all Defendants comply with this Order.

13.     Each Defendant's Chief Executive Officer and the Board, respectively, must review all plans and reports required by such Defendant under this Order, and any submissions to the Bureau, prior to such submission.

14.     One year after the Effective Date and again two years after the Effective Date, Defendants must submit to the Enforcement Director an accurate written compliance progress report (Compliance Report) that has been approved by the Board, the accuracy of which is sworn to under penalty of perjury, and which, at a minimum:

      a. describes the steps that the Board and each Defendant's Chief Executive Officer have taken to reasonably assess whether each Defendant is complying with each paragraph and subparagraph of this Order and the Redress Plan;

      b. describes in detail whether and how each Defendant has complied with each paragraph and subparagraph of this Order and the Redress Plan, including the manner of verification of such compliance and any corrective actions taken to remedy potential non-compliance with the applicable requirement, paragraph, or subparagraph;

      c. attaches a copy of each Order Acknowledgment obtained under Section X, unless previously submitted to the Bureau; and

      d. attaches a copy of assessments conducted pursuant to Paragraph 10 of this Order.

15.     The Board and all Defendants' Chief Executive Officers must:

a. authorize whatever actions are necessary for each Defendant to assess whether each Defendant is complying with each paragraph and subparagraph of this Order and the Redress Plan;

b. authorize whatever actions, including corrective actions, are necessary for each Defendant to fully comply with each paragraph and subparagraph of this Order and the Redress Plan; and

c. require timely reporting by management to the Board and each Defendant's Chief Executive Officer on the status of compliance obligations.

## MONETARY PROVISIONS

## IV.
## ORDER TO PAY REDRESS

**IT IS FURTHER ORDERED** that:

16.    Within 30 days of the Effective Date, Defendants must reserve or deposit into a segregated deposit account $5,000,000 for the purpose of providing redress to Affected Consumers as required by this Section (the "Redress Account"). Defendants will deposit additional funds into the Redress Account as the actual amount of redress is calculated such that the total amount Defendants deposit into the Redress Account equals the total amount of redress owed pursuant to the terms of this Order. At no point shall Defendants allow the balance of the Redress Account to fall below the total amount of redress owed but not yet paid to Affected Consumers. To the extent that the total amount of redress owed pursuant to this Order is less than the initial deposit amount of $5,000,000, Defendants shall be entitled to recoup the difference between the initial deposit amount and total redress.

17.    Defendants must provide redress to Affected Consumers as follows:

a. For Affected Consumers who redeemed their collateral: 120 percent of all fees, interest, and other charges (excluding principal) paid by the Affected Consumer to Defendants in connection with each non-MLA-

compliant pawn loan, each such pawn loan being included for redress solely through the process provided in paragraph 20, and without prejudice to Defendants' position in paragraph 2.

b. For Affected Consumers who did not redeem their collateral: all fees, interest, and other charges paid by the Affected Consumer to Defendants in connection with each non-MLA compliant pawn loan, plus an additional payment equivalent to the full principal amount of each non-MLA-compliant pawn loan made by Defendants to the Affected Consumer, each such pawn loan being included for redress solely through the process provided in paragraph 20, and without prejudice to Defendants' position in paragraph 2.

c. Defendants shall not be required to pay an Affected Consumer for any fees, interests, charges or principal otherwise due under subparagraphs 17.a or 17.b to the extent Defendants have previously returned those same fees, interests, charges or principal to the Affected Consumer. If those Affected Consumers who redeemed their collateral were not also provided in a prior payment at least 120 percent of the fees, interests, or charges paid in connection with the pawn loan subject to redress, they shall receive such additional payment for that pawn to satisfy the 120 percent requirement of paragraph 17.a.

d. Defendants relinquish all dominion, control, and title to all redress amounts sent to and accepted by Affected Consumers to the fullest extent permitted by law, and Defendants have no right to reclaim redress sent to and accepted by Affected Consumers pursuant to the terms of this Order.

18.    Defendants must provide all relief to Affected Consumers required by this Order, regardless of whether the total relief exceeds the amount reserved or deposited into the Redress Account. Defendants will ensure that the Redress Account is maintained, and that all valid claims

for redress are honored, regardless of any corporate transaction, change in corporate form, or asset sale that might otherwise affect the Redress Account, including specifically requiring any successor entity to maintain the Redress Account and continue to honor valid claims for redress. Five years after the Effective Date, Respondent must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, the balance of the Redress Account, at which point Defendants will not be responsible for honoring outstanding redress claims. The Bureau may use these remaining funds to pay additional redress to Affected Consumers. If the Bureau determines, in its sole discretion, that additional redress is wholly or partially impracticable or otherwise inappropriate, or if funds remain after the additional redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury. Defendants will have no right to challenge any actions that the Bureau or its representatives may take under this Section.

19.    Conditioned on the entry of this Order as proposed by the Parties, the Bureau has provided non-objection to a comprehensive written plan for providing redress consistent with this Order (Redress Plan). Defendants must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Redress Plan.

20.    The Bureau and Defendants shall agree on the population of Affected Consumers by the following:

a.    for the 42,698 pawn loans that the Bureau has already identified to Defendants as loans it asserts warrant redress for the period beginning October 3, 2016, and ending August 25, 2024, Defendants may lodge any objections to pawn loans identified on that list no later than 30 days after the Effective Date. The Parties will negotiate in good faith to resolve any objections raised by Defendants. If after 30 days the parties reach an impasse on any objection, they are required to meet in person at a mutually agreeable location to attempt to resolve any remaining objections.

b. No later than 30 days after the Effective Date, Defendants will provide the Bureau transaction data, with similar data fields as included in the previous data productions made to the Bureau on September 27, 2022, and September 20, 2024, for the period from August 25, 2024 to the Effective Date, sufficient to allow the Bureau to identify loans it believes warrant redress. Upon receipt of a Bureau-provided list of loans the Bureau contends warrant redress for that period, Defendants have no more than 30 days after receipt of that list to lodge objections with the Bureau. Thereafter, the process for resolving objections and finalizing the list of loans for which Defendants must pay redress, shall be the same as in subparagraph 20.a above.

c. No later than 6 months and 30 days after the Effective Date, Defendants will provide the Bureau transaction data, with similar data fields as included in the previous data productions made on September 27, 2022, and September 20, 2024, for the period from the Effective Date to 6 months after the Effective Date, or to the implementation of the MLA-Compliant pawn product described in Paragraph 9, whichever occurs first, sufficient to allow the Bureau to identify loans it believes warrant redress. Upon receipt of a Bureau-provided list of loans the Bureau contends warrant redress for that period, Defendants have no more than 30 days after receipt of that list to lodge objections with the Bureau. Thereafter, the process for resolving objections and finalizing the list of loans for which Defendants must pay redress shall be the same as in subparagraph 20.a above.

d. Defendants may not object to a loan being included in the redress population based on lack of consumer purpose unless the Defendants have evidence (beyond

11

the item used as collateral) that a specific loan was for some purpose other than consumer purpose.

21.     The Court retains jurisdiction over the parties to resolve any disputes that arise related to Defendants' performance under the Redress Plan or the process for identification of Affected Customers contained in Paragraph 20.  As part of resolving any or all of those disputes, the Court may order the parties to mediation, overseen by a mediator of the Court's choosing, with half of the costs of mediation to be paid for by Defendants and the other half to be paid for by the Bureau.

22.     Within 30 days of completing all actions required by the Redress Plan, Defendants must submit to the Bureau a Redress Report detailing the number of consumers and consumer accounts who received redress, the total amount of redress paid to those consumers, and such consumers' states of residence.

23.     Defendants may not condition the payment of any redress to any Affected Consumer under this Order on that Affected Consumer waiving any right.

## V.

## Order to Pay Civil Money Penalty

**IT IS FURTHER ORDERED** that:

24.     Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Amended Complaint and continuing until the Effective Date, Defendants must pay a civil money penalty of $4,000,000 to the Bureau.

25.     Within 10 days of the Effective Date, Defendants must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

26.     The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

27.     Defendants must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendants may not:

a. claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

b. seek or accept, directly or indirectly, reimbursement or indemnification from any source, including, but not limited to, payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

## VI.

## Additional Monetary Provisions

**IT IS FURTHER ORDERED** that**:**

28.     In the event of any default on Defendants' obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

29.     The facts alleged in the Amended Complaint will be taken as true and be given collateral estoppel effect, without further proof, in any proceeding based on the entry of the Order or in any subsequent civil litigation by or on behalf of the Bureau relating to this Order, including in a proceeding to enforce its rights to any payment or monetary judgment under this Order, such as a non-dischargeability complaint in any bankruptcy case.

30.     The facts alleged in the Amended Complaint establish all elements necessary to sustain an action by the Bureau under Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and for such purposes this Order will have collateral estoppel effect against each Defendant, even in such Defendant's capacity as debtor-in-possession.

31.     Defendants acknowledge that their Taxpayer Identification Numbers, which Defendants previously submitted to the Bureau, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

32.     Within 30 days of the entry of a final judgment, order, or settlement in a Related Consumer Action, Defendants must notify the Enforcement Director of the final judgment, order, or settlement in

writing. That notification must indicate the amount of redress, if any, that Defendants paid or are required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid. To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendants may not argue that Defendants are entitled to, nor may Defendants benefit by, any offset or reduction of any compensatory remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund. If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies imposed against Defendants based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, Defendants must, within 30 days after entry of a final order granting such offset or reduction, notify the Bureau and pay the amount of the offset or reduction to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

## VII.

### Release

33.    The Bureau releases and discharges Defendants from all potential liability for law violations that the Bureau has or might have asserted consistent with Fifth Circuit precedent that "[a]n agreed judgment is entitled to full res judicata effect." *United States v. Shanbaum*, 10 F.3d 305, 313 (5th Cir. 1994). This release does not preclude or affect any right of the Bureau to determine and ensure compliance with this Order, or to seek penalties for any violations of this Order.

14

## COMPLIANCE PROVISIONS

### VIII.

### Reporting Requirements

**IT IS FURTHER ORDERED** that:

34.    Defendants must notify the Bureau of any development that may affect compliance obligations arising under this Order, including, but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Defendants; or a change in Defendants' names or addresses. Defendants must provide this notice, if practicable, at least 30 days before the development, but in any case, no later than 14 days after the development.

35.    Within seven days of the Effective Date, Defendants must:

a.  designate at least one telephone number and email, and postal address that the Bureau may use to communicate with Defendants; and

b.  designate at least one telephone number and email and postal address as points of contact for consumers with inquiries related to consumer relief under this Order.

36.    Defendants must report any change in the information required to be submitted under Paragraph 34 at least 30 days before the change or as soon as practicable after learning about the change, whichever is sooner.

### IX.

### Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that:

37.    Within seven days of the Effective Date, Defendants must submit to the Enforcement Director an acknowledgment of receipt of this Order, sworn under penalty of perjury.

38.    Within 30 days of the Effective Date, Defendants must deliver a copy of this Order to all members of the Board and all

Defendants' executive officers, as well as to employees at the level of Vice President or above who have responsibilities related to the subject matter of the Order.

39.    For five years from the Effective Date, Defendants must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section VIII, any future members of the Board and any Defendants' future executive officers, as well as to any managers, employees, service providers, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

40.    Defendants must secure a signed and dated statement acknowledging receipt of a copy of this Order, or other electronic verification of receipt, within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

41.    Ninety days from the Effective Date, Defendants must submit to the Bureau a list of all persons and their titles to whom this Order was delivered under the Section of this Order titled "Order Distribution and Acknowledgment" and a copy of all signed and dated statements acknowledging of receipt of this Order under Paragraph 40.

## X.

## Recordkeeping

**IT IS FURTHER ORDERED** that:

42.    Defendants must create, for at least five years from the Effective Date, the following business records:

> a. all documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau; and
>
> b. all documents and records pertaining to the Redress Plan, described in Section IV above.

43.    Defendants must retain these documents for at least five years after creation and make them available to the Bureau upon the Bureau's request. All documents and records must be maintained in their original electronic format. Data must be maintained in such a way that access, retrieval, auditing and production are not hindered.

## XI.

### Notices

**IT IS FURTHER ORDERED** that:

44.    Unless otherwise directed in writing by the Bureau, Defendants must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*CFPB v. FirstCash, Inc., et al.*, Case No. NDTX 21-1251-P," and send them to the following email: Enforcement_Compliance@cfpb.gov addressed as follows:

> ATTN:  Enforcement Director
> Division of Enforcement
> Consumer Financial Protection Bureau

## XII.

### Cooperation with the Bureau

**IT IS FURTHER ORDERED** that:

45.    Defendants must remain registered for the Bureau's Company Portal and in connection with responding to consumer complaints and inquiries on the Company Portal, whether acting directly or indirectly, must comply with the timely response requirements set forth in that §§ 1034(b)(1)-(3) and (c) of the CFPA, 12 U.S.C. §§ 5534(b). Unless otherwise prohibited by law or regulation, for five years Defendants must disclose on their consumer-facing websites that consumers can file a complaint with the Bureau and also provide the applicable telephone, website, and mailing information to do so.

## XIII.

### Compliance Monitoring

**IT IS FURTHER ORDERED** that:

46.    Within 14 days of receipt of a written request from the Bureau, Defendants must submit additional compliance reports or other requested information, including sworn testimony or documents, which

must be made under penalty of perjury, regarding: (a) this matter, or (b) compliance with the Order.

47.    For purposes of this Section, the Bureau may communicate directly with Defendants, unless Defendants retain counsel related to these communications.

48.    Defendants must permit Bureau representatives to interview any employee or other person affiliated with Defendants who have agreed to such an interview regarding: (a) this matter; (b) compliance with this Order. The person interviewed may have counsel present.

49.    Nothing in this Order will limit the Bureau's lawful use of compulsory process, under 12 C.F.R. § 1080.6.

## XIV.

### Transfer or Assignment of Operations

**IT IS FURTHER ORDERED** that:

50.    Should Defendants seek to transfer or assign any part of their operations that are subject to this Order, Defendants must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Order.

## XV.

### Retention of Jurisdiction

**IT IS FURTHER ORDERED** that:

51.    All pending motions are hereby denied as moot.

52.    The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

53.    Unless stated otherwise, all provisions of this Order except shall expire five years after the Effective Date.

The Court, having reviewed the parties Stipulated Judgment, and for good cause, hereby declares and decrees that it become the Judgment of this Court.

**SO ORDERED** on this **11th day of July 2025.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

## MLA Compliant Pawn Product Signage

<div style="border:1px solid black;">

**ARE YOU ACTIVE DUTY MILITARY OR A MILITARY DEPENDENT?**

**If so, you may qualify for a lower interest rate on your pawn**

Show us your current active duty or dependent military ID
to see if you qualify for a lower interest rate

**Military Annual Percentage Rate Disclosure**

Federal Law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, **the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent.**

</div>

# EXHIBIT B

# Required Intake Procedure for MLA Compliant Pawn Product

At the outset of every pawn transaction, Defendants' store employees will be required to read the following script to each customer. This series of statements and questions will automatically appear in the store point of sale ("POS") system, and the answers must be recorded by the employee before the pawn transaction can proceed:

- Federal Law provides important protections to covered members of the Armed Forces and their dependents relating to pawn loans used for consumer purposes. In general, those pawn loans may not exceed an annual percentage rate of 36 percent. The following questions will allow me to identify whether you qualify for a lower interest rate pawn.

- Covered Borrower Questions:

  - Question #1: "Have you, a spouse, a parent, or any of your children ever been a member of the U.S. Armed Forces?"

    - If asked: "Armed Forces means U.S. Army, Navy, Air Force, Marines, Space Force, or Coast Guard, including active duty, National Guard, or active duty reservist."

    - If no, go to question #8.

    - If yes as to customer, go to question #2.

    - If yes as to spouse, go to question #3.

    - If yes as to parent, go to questions #4 & 5.

    - If yes as to child, go to questions #6 & 7.

  - Question #2: "Are you currently a member in the U.S. Armed Forces serving on active duty under a call or order that does not specify a period of 30 days or less, or are you currently on active Guard or active Reserve Duty?"

    - If yes, go to military ID questions.

    - If no, go to question #8.

  - Question #3: "Is your spouse currently a member in the U.S. Armed Forces serving on active duty under a call or

order that does not specify a period of 30 days or less, or currently on active Guard or active Reserve Duty?"

- ▪ If yes: Go to military ID questions.
- ▪ If no, go to question #8.

○ Question #4: "Do you have a parent who is currently a member in the U.S. Armed Forces serving on active duty under a call or order that does not specify a period of 30 days or less, or currently on active Guard or active Reserve Duty?"

- ▪ If yes, ask questions 4(a), 4(b), and 4(c)
  - • Question 4(a): "Are you under 21 years old?"
    - ○ If yes: Go to military ID questions.
  - • Question 4(b): "Are you under 23 and a full-time student?"
    - ○ If yes: "Are you dependent on your parent in the armed services for more than half of your financial support?"
      - ▪ If yes: Go to military ID questions.
  - • Question 4(c): "Are you incapable of self-support because of a mental or physical incapacity?"
    - ○ If yes: "Are you dependent on your parent in the U.S. Armed Forces for more than half of your financial support?"
      - ▪ If yes: Go to military ID questions.

○ Question #5: "Do you have a parent who was previously a member of the U.S. Armed Forces serving on active duty or active Guard or active Reserve Duty, and who has passed away?"

- ▪ If yes: "At the time of that parent's death, were you receiving more than half of your financial support from that parent?"
  - • If yes: "Are you under 23 and enrolled in full-time study?"
    - ○ If yes: Go to military ID questions.

- o If no: "Are you incapable of self-support because of a mental or physical incapacity?"
  - ▪ If yes: Go to military ID questions.
- o If customer not eligible under questions 4 & 5, go to question #8.
- o Question #6: "Are you the parent or parent-in-law of a current member in the U.S. Armed Forces serving on active duty under a call or order that does not specify a period of 30 days or less, or someone currently on active Guard or active Reserve Duty?"
  - ▪ If yes: "Do you currently live in their household and depend on them for over half of your financial support?"
    - • If yes: Go to military ID questions.
    - • If no, go to question #8.
- o Question #7: "Are you the parent or parent-in-law of a former member of the U.S. Armed Forces serving on active duty or active Guard or active Reserve Duty, and who has passed away?"
  - ▪ If yes: "At the time of their death, did you live in their household and depend on them for over half of your financial support?
    - • If yes: Go to military ID questions.
    - • If no, go to question #8.

- o Question #8: "Are you unmarried and have been placed in the legal custody of a member or former member of the U.S. Armed Forces by a court order, for a period of at least 12 consecutive months?"
  - ▪ If yes: "Are you dependent on that person for over half of your financial support?"
    - • If yes: "Do you live with that person, or would you live with that person if you were not separated due to their military service or to receive institutional care?"
      - o If yes: "Are you: (a) under the age of 21, (b) under the age of 23 and enrolled in full-time study, or (c) incapable of self-support because of a mental or physical incapacity that occurred while you were dependent on the military member?"
        - ▪ If yes:  Go to military ID questions.

- • Military ID Questions:  (If the customer is eligible for the MLA pawn product based on the answers above, the employee will be prompted in POS to ask the following.)

  - o "Do you have a current military ID as an active duty servicemember or a dependent?"

  - o If customer says "yes" and the customer presents a valid military ID, the employee will offer the customer the MLA-compliant pawn product.
    - ▪ The customer will also have the option instead to sell the merchandise to FirstCash, which the customer can always choose to do.

  - o If the customer has a military ID but does not have it on them, then the employee will inform them that they can obtain the MLA-compliant pawn product if they come back and present a valid military ID.

  - o If the consumer cannot produce a valid military ID, Defendants have the discretion to accept other forms of proof that the consumer is a covered borrower, potentially including recent military earnings and leave statements.

  - o The POS system will not permit an employee to issue a pawn loan with MLA-violative terms to any consumer who

answered "yes" to any of the questions. The POS will automatically lock any "yes" responses such that an employee cannot change a response from "yes" to "no" without store-manager approval.

- If the customer has a valid military ID available, the employee will enter the customer's military ID number into POS system and execute the pawn transaction using the MLA-compliant product.

- The customer will not be charged any fees by FirstCash that are in addition to the underlying charges associated with the MLA-compliant pawn transaction, including lost ticket fees, storage fees, service fees, or set-up fees.